**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTOPHER A. HUGHES,**

        **Plaintiff,**         **1:10-cv-1489**
                                          **(GLS/RFT)**
    **v.**

**TOWN OF BETHLEHEM et al.,**

        **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Sussman, Watkins Law Firm<br>55 Main Street, Suite 6<br>P.O. Box 1005<br>Goshen, NY 10924 | MICHAEL H. SUSSMAN, ESQ. |
| **FOR THE DEFENDANTS:**<br>Napierski, Vandenburgh Law Firm<br>296 Washington Avenue Extension<br>Albany, NY 12203 | THOMAS J. O'CONNOR, ESQ.<br>ASA S. NEFF, ESQ.<br>SHAWN T. NASH, ESQ. |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Christopher A. Hughes commenced this action against defendants Town of Bethlehem and Police Chief Louis Corsi pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment rights of union

association[1] and free speech. (*See* Compl., Dkt. No. 1.) Pending is defendants' motion to dismiss and/or for summary judgment. (*See* Dkt. No. 18.) For the reasons that follow, the motion is denied.

## II. Background

Hughes, who was an officer with the Town of Bethlehem Police Department during the time period relevant to this case, authored three letters, dated March 12 and 16, and April 5, 2009 (hereinafter "the letters"), written to "President Anson" of the Police Benevolent Association (PBA). (Dkt. No. 21, Attachs. 18-20; *see* Plaintiff's Statement of Material Facts (SMF) ¶¶ 1, 5-6, 41A, Dkt. No. 20 at 11-30.) The letters contain a litany of allegations by Hughes regarding his job-related mistreatment, and others about individuals in the Police Department and the Department's general dysfunction. (*See* Dkt. No. 21, Attachs. 18-20.)

On May 8, 2009, Hughes wrote to the Public Integrity Unit of the Albany County District Attorney's Office to complain about a Department Detective; in particular, Hughes alleged that the Detective, among other things, is an alcoholic and makes questionable decisions while on duty.

---

[1] Hughes' freedom of association and freedom of speech claims are subject to the same requirements. *See Cobb v. Pozzi*, 363 F.3d 89, 102-03 (2d Cir. 2006).

2

(*See* Dkt. No. 21, Attach. 23.)  Hughes made a similar complaint to the Public Integrity Unit on August 20, 2009.  (*See* Dkt. No. 21, Attach. 24.)  In April or May 2009, Hughes learned that Chief Corsi used a racial slur while speaking to Albany County Undersheriff Mahan.  (*See* Defs.' SMF ¶ 27, Dkt. No. 18, Attach. 9.)  Hughes eventually went to the news media with that information in June 2009, which culminated in the publication of an article on the topic in a local newspaper.  (*See* Pl.'s SMF ¶ 55.)

Hughes was subjected to a host of disciplinary charges for incidents occurring between late March and June 2009, which he alleges were retaliatory.  (*See generally* Dkt. No. 21, Attachs. 2, 3; Compl. ¶ 40.)  Arbitrators ultimately found that Hughes was not guilty of the charges.  (*See* Dkt. No. 21, Attachs. 2, 3.)  In September 2009, Chief Corsi ordered Hughes to surrender his gun and badge.  (*See* Dkt. No. 21, Attach. 11 at 50-52; Pl.'s SMF ¶¶ 114-20.)  Finally, in October 2009, Chief Corsi ordered that Hughes undergo a mental health examination.  (*See* Dkt. No. 21, Attach. 29.)

### III.  Standard of Review

The standards of review under Fed. R. Civ. P. 12(b)(6) and 56 are well established and will not be repeated here.  For a full discussion of

3

those standards, the court refers the parties to its decisions in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010) and *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), respectively.

## IV.  Discussion

### A.  First Amendment Retaliation Standard

"[W]hile the government enjoys significantly greater latitude when it acts in its capacity as employer than when it acts as sovereign, the First Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of their protected speech." *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001). Accordingly, a public employee may establish a First Amendment retaliation claim against his governmental employer under 42 U.S.C. § 1983 upon proof "that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the [adverse employment action]." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 129-130 (2d Cir. 2013) (internal quotation marks and citation omitted). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking

4

into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir.1999) (citing *Connick v. Myers*, 461 U.S. 138, 147-48 & n.7 (1983)).

Nevertheless, if a plaintiff shows that the three factors are satisfied, the government may still avoid liability if it makes one of two showings. "The government may either (1) demonstrate by a preponderance of the evidence that it would have taken the same adverse action regardless of the protected speech, or (2) show that the plaintiff's expression was likely to disrupt the government's activities, and that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression." *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004); *see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). With these principles in mind, the court turns to the matter at hand.

    *1.    Protected Speech*

The First Amendment protects a public employee's speech only when it is "made as a citizen on matters of public concern rather than as an employee on matters of personal interest." *Garcia*, 706 F.3d at 130

5

(internal quotation marks and citation omitted).  "Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'"  *Johnson v. Ganim,* 342 F.3d 105, 112 (2d Cir. 2003) (quoting *Connick,* 461 U.S. at 146).  As mentioned above, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Connick*, 461 U.S. at 147-48.  While the employee's motive "may be one factor in making this determination, it is not, standing alone, dispositive or conclusive."  *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009).

In the present case, defendants contend that "virtually all" of Hughes' complaints and grievances were personal and job related, and thus did not constitute protected speech under the First Amendment.  (Dkt. No. 18, Attach. 10 at 12-13.)  The Complaint alleges three distinct instances involving protected speech: (1) the letters sent by Hughes to PBA President Anson; (2) Hughes' disclosures to the Public Integrity Unit involving an unfit police officer; and (3) Hughes' disclosure to the news media that Chief Corsi made a racist remark.  (*See* Compl. ¶¶ 14-17, 20, 29-30.)  Although the letters and complaints made by Hughes permeate a

6

tone of hostility, and the timing of their filing, as well as the remoteness in time of certain events about which they protest suggest a less than altruistic motive underlying their disclosure, they nevertheless touch on issues of public concern.  For example, the speech alleges departmental cronyism resulting in the promotion of unfit officers, the failure to address the performance of official duties by certain officers while intoxicated, and the use of racially charged language by Chief Corsi.  *See Sousa*, 578 F.3d at 171-74.  Accordingly, as a matter of law, Hughes' speech is protected under the First Amendment.

    2.    *Adverse Employment Action*

"In the context of a First Amendment retaliation claim, [the Second Circuit has] held that [o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks and citations omitted).  Under this definition, "[a]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Id.* at 226 (internal quotation marks and citation omitted).  "This list of retaliatory conduct is certainly not exhaustive,

7

however, and lesser actions," such as negative reviews, false accusations, and menial job assignments, "may also be considered adverse employment actions." *Id.* (internal quotation marks and citation omitted). While relatively *de minimis* incidents standing alone will not give rise to a First Amendment retaliation claim, "a combination of seemingly minor incidents [may] form the basis of a constitutional retaliation claim once they reach a critical mass" and create "a working environment unreasonably inferior to what would be considered normal for that position." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) (internal quotation marks and citations omitted). Importantly, "an act in retaliation for the employee's exercise of a constitutional right need not be tied to harm in the workplace." *Lore v. City of Syracuse*, 670 F.3d 127, 163-64 (2d Cir. 2012).

Hughes contends that defendants took numerous adverse actions against him in retaliation for his exercise of protected speech. For instance, disciplinary charges were lodged against Hughes in April, May and June 2009. (*See generally* Dkt. No. 21, Attachs. 2, 3.) In September 2009, while Hughes was on disability leave, he was stripped of his badge and duty weapon, and was required to undergo a mental health examination. (*See* Pl.'s SMF ¶¶ 114, 120, 128.) A local newspaper quoted

8

the Bethlehem Town Supervisor as stating that the reason that Hughes was forced to relinquish his badge and weapon was because of his "emotional state." (Dkt. No. 21, Attach. 16 at 2.) In a separate article, in which it was suggested that the town would no longer pay Hughes, the town's attorney was quoted as stating that Hughes appeared to be "perfectly healthy." (Dkt. No. 21, Attach. 17 at 2.) Finally, on September 9, 2009, Hughes was prohibited from entering the Bethlehem Police station. (*See* Dkt. No. 21, Attach. 26.) Considering these actions together, and in light of defendants' lack of a discernable argument regarding the existence of adverse actions, Hughes has adduced evidence sufficient to defeat defendants' motion as to this prong.

    *3.    Causation*

The last showing which must be made for a plaintiff to establish a First Amendment retaliation claim is a causal relationship between the protected speech and the adverse employment action. *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999), *abrogated on other grounds by Lore*, 670 F.3d 127. "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment

9

action would not have been taken absent the employee's protected speech." *Id.* at 110. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Id.* (internal citation omitted).

Hughes contends that statements made by Chief Corsi and various other town officials, as well as the temporal proximity between his exercise of protected speech and the adverse actions are evidence of a causal connection. (*See* Dkt. No. 22 at 26-28.) Defendants argue that their actions were not inspired by retaliatory animus, and that, instead, "they showed [admirable] restraint in the face of [Hughes'] disruptive and insubordinate conduct." (Dkt. No. 18, Attach. 10 at 14.) Simply put, the disputed material facts contained in the record preclude granting summary judgment to defendants. *See Morris*, 196 F.3d at 110 ("Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision.")

    *4.    Government Defenses*

The defendants contend that, even if Hughes has established a First

Amendment freedom of speech claim, they are nevertheless entitled to the *Mt. Healthy* defense because they "would have taken the same adverse action in the absence of the protected speech," or, alternatively, that under the *Pickering* balancing test, Hughes' "speech would disrupt the government's activities and such disruption is sufficient to outweigh the First Amendment value of" his speech.  (Dkt. No. 18, Attach. 10 at 13-16); *see Locurto*, 264 F.3d at 166.  In light of the disputed questions of material fact surrounding, in particular, motive, defendants have failed to "show, by a preponderance of the evidence, that [they] would have taken the action [they] did regardless of [Hughes'] speech."  *Caidor v. Onondaga Cnty.*, No. 5:03-CV-00031, 2006 WL 2595202, at *8 (N.D.N.Y. Sept. 11, 2006).  Similarly, although the court acknowledges defendants' considerable interest in maintaining an efficient and effective police department, and notes that the record suggests that Hughes' speech was driven, in part, by personal motives, upon a thorough balancing, defendants have failed to meet their burden of "demonstrating that the speech threatens to interfere with government operations."  *Lewis*, 165 F.3d at 162; *see Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011) (noting that "if the allegations of internal misconduct are indeed true, [the employee's] statements could not

11

have adversely affected the *proper* functioning of the department since the statements were made for the very reason that the department was not functioning properly").

### 5.  *Qualified Immunity*

Finally, Chief Corsi argues that he is entitled to qualified immunity. (*See* Dkt. No. 18, Attach. 10 at 16-17.)  "[I]n an action in which an official's conduct is objectively reasonable but an unconstitutional subjective intent is alleged, the plaintiff must proffer particularized evidence of direct or circumstantial facts . . . supporting the claim of an improper motive in order to avoid summary judgment." *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir. 1995).  That particularized evidence "may include expression by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Id.*  Assuming, *arguendo*, that Chief Corsi's conduct was objectively reasonable, the court agrees with Hughes that, viewed in the light most favorable to him, the same facts which precluded judgment on the issue of a causal connection undermine Chief Corsi's entitlement to qualified immunity.  (*See* Dkt. No. 22 at 28.)

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion to dismiss and/or for summary judgment (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that this case is deemed trial ready and the court, in due course, shall issue a trial scheduling order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 29, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

13