UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER A. HUGHES,

                Plaintiff,          1:10-cv-1489
                                                   (GLS/RFT)

        v.

TOWN OF BETHLEHEM et al.,

                Defendants.
_____

**APPEARANCES:**                            **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Sussman, Watkins Law Firm         MICHAEL H. SUSSMAN, ESQ.
55 Main Street, Suite 6
P.O. Box 1005
Goshen, NY 10924

**FOR THE DEFENDANTS:**
Napierski, VanDenburgh Law Firm    THOMAS J. O'CONNOR, ESQ.
296 Washington Avenue Extension    ANDREW S. HOLLAND, ESQ.
Albany, NY 12203                          SHAWN T. NASH, ESQ.

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Christopher A. Hughes commenced this action against defendants Town of Bethlehem and Police Chief Louis Corsi pursuant to 42 U.S.C. § 1983, alleging retaliation in violation of his First Amendment

rights of union association and free speech.  (*See generally* Compl., Dkt. No. 1.)  Pending is Hughes' motion to set aside the verdict and order a new trial pursuant to Fed. R. Civ. P. 59(a).  (Dkt. No. 79.)  For the reasons that follow, the motion is denied.

## II. <u>Background</u>[1]

Hughes was an officer with the Town of Bethlehem Police Department and a member of the Bethlehem Police Benevolent Association during the time period relevant to this case.  (Compl. ¶¶ 5, 6.)  In his complaint, Hughes alleged that he was retaliated against because he engaged in conduct that is protected under the First Amendment, namely speech and association in the form of union activity.  (*See generally* Compl.)  Specifically, in the Fall of 2007, Hughes drafted a work substitution policy, which, he claimed, Chief Corsi opposed, and, throughout the Spring of 2009, he also drafted several letters to the union president that were, among other things, critical of the police department.  (*Id.* ¶¶ 8-10; Dkt. No. 29 at 2.)  Hughes claimed that, as a result of his union activity, Chief Corsi denied Hughes promotions, including a promotion to K-9 handler.  (Compl. ¶ 12.)  In the spring and summer of

---

[1] The court presumes familiarity with the underlying facts and procedural history.

2

2009, Hughes also engaged in various forms of speech that were critical of: (1) the police department's tolerance and condonation of a detective's on-the-job intoxication; and (2) Chief Corsi's utterance of a racial epithet, which Chief Corsi subsequently attempted to cover up, and which, in Hughes' view, the Town failed to properly and thoroughly investigate. (*Id.* ¶¶ 14-20, 29; Dkt. No. 29 at 2-3.) Hughes alleged that, as a result of his speech, he was brought up on erroneous disciplinary charges, and, ultimately, his badge, weapon, and identification were confiscated and his access to the police department was limited. (Compl. ¶¶ 13, 31, 37, 38, 39; Dkt. No. 29 at 3.)

After the court denied defendants' motion to dismiss and/or for summary judgment, (Dkt. No. 29), the parties proceeded to a five-day jury trial, which was held from November 3 to 7, 2014. At the close of the proof, the court instructed the jury.² First, the court instructed the jury that

---

² Prior to instructing the jury, the court held a charge conference. Among other things, the court noted that, to succeed on a First Amendment retaliation claim brought pursuant to § 1983, a plaintiff must be able to demonstrate that: (1) the conduct at issue was constitutionally protected; (2) the alleged retaliatory action adversely affected his constitutionally protected conduct; and (3) a causal relationship existed between the constitutionally protected conduct and the retaliatory action. *See Camacho v. Brandon*, 317 F.3d 153, 160 (2d Cir. 2003). The court further noted that the first element that Hughes must prove—that his union activity and speech were constitutionally protected—is a question of law for the court to decide. *See Wrobel v. Cnty. of Erie*, 692 F.3d 22, 28 (2d Cir. 2012). However, the court informed the parties that it intended to reserve judgment on whether Hughes' speech was constitutionally protected, and, instead, submit all instances of Hughes' speech to the jury

3

Hughes had three separate First Amendment retaliation claims: one based on his freedom of association (union activity), a second based on his speech related to Chief Corsi's utterance of a racial slur, and a third based on his speech related to the public health and welfare—i.e., his speech regarding the intoxication of a detective while on duty. (*See* Dkt. No. 72.) The court further instructed the jury on, among other things, the elements that Hughes needed to establish by a preponderance of the evidence in order to prove each of his three claims, and also what defendants needed to prove in order to establish their affirmative defense—the *Mt. Healthy* or "same decision" defense. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Deep v. Coin*, 453 F. App'x 49, 52 (2d Cir. 2011). Neither party objected to any part of the instructions, and the case was then submitted to the jury.

    After deliberating, the jury delivered a verdict in favor of defendants.

---

as if it were all protected. In the event that the jury found that Hughes suffered adverse employment actions because of his speech, the court would then decide whether the speech was constitutionally protected in the first instance. On the other hand, if the jury decided that Hughes was not retaliated against because of his speech or, alternatively, that Hughes was retaliated against, but defendants proved an affirmative defense, there would be no need to determine whether the speech was constitutionally protected, as his claims necessarily would have failed for other reasons. Neither party objected to this approach. Finally, it is also worth noting that defendants did not request that the court instruct the jury on the qualified immunity defense. (*See generally* Dkt. No. 49.) Rather, defendants preferred that the court decide this issue, if necessary, after the jury reached a verdict.

(Dkt. No. 72.) Specifically, the jury found that Hughes failed to prove both his First Amendment retaliation claim based on his union association and his First Amendment retaliation claim based on his speech relating to Chief Corsi's utterance of a racial epithet. (*Id.* at 2.) The jury also found that, while Hughes did prove his First Amendment retaliation claim based on his speech regarding public safety and welfare, Chief Corsi proved that he would have taken the same adverse actions against Hughes even in the absence of Hughes' speech.[3] (*Id.* at 3.) Thereafter, Hughes filed the now-pending motion for a new trial. (Dkt. No. 79.)

### III. Standard of Review

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, a district court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." In this Circuit, in order to grant a motion for a new trial under Rule 59(a), a court "must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must

---

[3] Given this outcome, the question of whether Hughes' speech was constitutionally protected was rendered moot. Defendants also did not request that the court determine whether Chief Corsi was entitled to qualified immunity. Instead, both parties reserved their rights to raise and brief these issues in post-trial motions.

5

view the jury's verdict as against the weight of the evidence." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (internal quotation marks and citation omitted). "[A] new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and . . . a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.* at 244-45 (internal quotation marks and citation omitted). The task before the court is to balance "respect [for] the jury's findings . . . with avoidance of miscarriage of justice[,] and" the court may only grant a new trial if, after viewing all the evidence, it has "a definite and firm conviction that a mistake has been committed." *Cunningham v. Town of Ellicott*, No. 04CV301, 2007 WL 1756502, at *4 (W.D.N.Y. June 18, 2007) (internal quotation marks and citations omitted), *aff'd* 310 F. App'x 448 (2d Cir. 2009).

## IV. **Discussion**[4]

Hughes seeks a new trial on the ground that the jury's verdict went

---

[4] At the outset, the court notes that neither party has asked the court to decide whether Hughes' speech was constitutionally protected or whether Chief Corsi is entitled to qualified immunity. (*See generally* Dkt. Nos. 80, 84.) Rather, as discussed more fully below, Hughes only argues that a new trial is necessary because the verdict went against the weight of the evidence. (*See generally* Dkt. No. 80.) Accordingly, because neither party asks that the court decide these two peripheral issues, and because the court is confident that the verdict can stand on its own, the court declines to address these issues *sua sponte*.

6

against the substantial weight of the evidence.[5] (*See generally* Dkt. No. 80.) Specifically, Hughes first argues that it was irrational for the jury to have concluded that defendants retaliated against him with respect to his speech about a detective's intoxication, but not with respect to his speech regarding Chief Corsi's racial slur or his union activity. (*Id.* at 18-21.) Hughes also contends that defendants failed to prove their affirmative defense, "and the jury's conclusion that the Town would have proceeded in the same way absent [Hughes' speech and union activity] is sheer speculation unsupported by any evidence." (*Id.* at 22-24.)

In response, defendants provide little to no actual argument. (*See generally* Dkt. No. 84.) In fact, the parties' respective briefs are like ships passing in the night. Defendants do, however, citing trial testimony and certain exhibits, articulate the facts differently than Hughes does, and explain that, for every allegedly adverse action taken against Hughes, there were non-retaliatory justifications. (*Id.*) For the reasons that follow,

---

[5] It should be noted that, before providing any argument, Hughes spends several pages listing, in numbered paragraphs, purported "facts and legal conclusions." (Dkt. No. 80 at 1-16.) While these paragraphs refer to evidence, mostly in the form of trial testimony, that the court may weigh and consider, these are not necessarily the facts that the jury found or the conclusions that the jury reached. Instead, these numbered paragraphs represent Hughes' view of the facts and the conclusions that Hughes wishes the court to draw. As further discussed below, the court does not agree that the verdict is against the weight of the evidence.

the court concludes that Hughes has failed to meet his burden of establishing that a new trial is warranted.

**A.** <u>**Union Activity and Speech Concerning Chief Corsi's Racial Slur**</u>

Hughes argues that, "[w]hile [he] plainly spoke out about [the detective's intoxication], the evidence demonstrates that his other constitutionally protected activity was of far greater moment," because "his protected union activity and his speech about [Chief] Corsi's utterance of a racist epithet were both more consistent and of greater concern to" defendants. (Dkt. No. 80 at 18-21.)

As an initial matter, and perhaps most fundamentally, just because the jury found retaliation in connection with one form of conduct, does not mean, *ipso facto*, that they should have found retaliation in connection with all other forms of protected activity, even if, as Hughes argues, the other forms of protected activity were "of far greater moment." (*Id.* at 18.) It is well-established "that a jury is entitled to believe part and disbelieve part of the testimony of any given witness, and its . . . choices between competing factual inferences are not to be second-guessed." *Lore v. City of Syracuse*, 670 F.3d 127, 150 (2d Cir. 2012) (citations omitted).

Further, in support of his argument that the jury's finding that he was

8

not retaliated against because of his union activity went against the weight of the evidence, Hughes claims that "[d]efendant[s] barely dispute[d]" certain testimony. (Dkt. No. 80 at 18-19.) Specifically, Hughes points to his brother, Brian Hughes', testimony that Chief Corsi expressed "that he could no longer support [Hughes] for a promotion within the department" because he was "[p]rovoked by [Hughes'] challenge to the discretion accorded [to] the police administration to grant or deny [shift] switches." (*Id.*; Dkt. No. 81, Attach. 6 at 8-11.) Hughes also cites his own testimony concerning a conversation he had with the Town's human resources director, Mary Tremblay-Glassman, in which, Hughes claims, "she made clear she could not assist [him]," and argues that, at trial, she did not "deny that she repelled [Hughes'] effort to gain redress from this retaliatory animus." (Dkt. No. 80 at 18-19; Dkt. No. 81, Attach. 1 at 18-20; Dkt. No. 81, Attach. 9 at 2-6.) The jury, however, is "not required to accept testimony even though the testimony is not contradicted and the witness's testimony is not challenged[,]" and the jury "may decide because of the witness's bearing or demeanor, or because of the inherent improbability of the testimony, or for other reasons sufficient to [them]selves that the testimony is not worthy of belief." *Brink v. Muscente*, No. 11 Civ. 4306,

9

2014 WL 4810329, at *5 (S.D.N.Y. Sept. 23, 2014) (internal quotation marks and citations omitted). Thus, because the jury was entitled to believe or disbelieve Hughes and his brother, the jury was free to reject their testimony and find, as they evidently did, that Hughes failed to carry his burden.

Moreover, Chief Corsi did, in fact, categorically deny that Hughes' future in the police department was jeopardized by his participation in union activities.[6] (Dkt. No. 81, Attach. 17 at 1-2.) Further, a more fair and accurate assessment of the testimony is that both Chief Corsi and Tremblay-Glassman, in large part, stated that they were unable to recall making the comments that Hughes accused them of making, or that they remembered their respective conversations focusing on different subject matter. (Dkt. No. 81, Attach. 7 at 18-30; Dkt. No. 81, Attach. 9 at 3-6.) "A lack of recollection is not a lack of dispute," however, and "given the

---

[6] The court also notes that defendants proffered evidence that Hughes was not promoted because he withdrew his name for consideration for a promotion in 2006, and never again applied for or expressed interest in a promotion. (Dkt. No. 81, Attach. 3 at 49-50; Dkt. No. 85, Attach. 2.) Regarding the K-9 handler position, defendants provided evidence that the position was vacated in the 1990s and never revived. (Dkt. No. 81, Attach. 6 at 20-21.) This version of the facts provides further support for the conclusion that the jury's verdict was not against the weight of the evidence, as the jury could have reasonably concluded that Hughes was never promoted because he did not apply for a promotion, or because the position he coveted did not exist.

divergent narratives presented by the parties here, the plain task for the jury was to determine . . . which they found more credible" and "to resolve the conflicts in the testimony." *Brink*, 2014 WL 4810329, at *6. Hughes' argument, therefore, is unavailing, and the jury's failure to find liability with respect to Hughes' union activity does not contradict the weight of the evidence.

Similarly, Hughes contends that "the record makes abundantly clear that [his] disclosure to the Town Supervisor of [Chief] Corsi's use of a racial epithet . . . and his related inquiry of subordinates as to whether this recording could be erased prompted the Town and [Chief] Corsi to retaliate against" Hughes. (Dkt. No. 80 at 19-21.) Again, Hughes speaks in conclusory form and cherry-picks the record by citing only those facts and testimony that might support his position. Specifically, without providing any citations to the record, Hughes explains that, after he began reporting and publically discussing Chief Corsi's use of a racial slur, two sets of disciplinary charges were lodged against him, he was barred from the police department, and his badge, gun, and identification were confiscated. (*Id.*) Defendants, on the other hand, again provide a different story, and one that indicates that there were non-retaliatory reasons for any adverse

11

actions taken against Hughes. (Dkt. No. 84 at 6-12.)

First, with respect to the earlier set of disciplinary charges, defendants point to evidence—largely in the form of testimony from Chief Corsi and Thomas Heffernan, Jr., a lieutenant for the Bethlehem Police Department—indicating that these charges were lodged against Hughes because he canceled a meeting with an assistant district attorney (ADA), rescheduled the meeting for a day when he was not scheduled to work so that he could receive overtime, failed to attend the meeting when it was rescheduled to its original time, requested overtime for reporting to the meeting that had been canceled, and abused sick time, which appeared to be part of a larger pattern of abuse. (Dkt. No. 81, Attach. 15 at 1, 11-19; Dkt. No. 81, Attach. 17 at 6-9; Dkt. No. 81, Attach. 18 at 3-4; Dkt. No. 84 at 6-10; Dkt. No. 85, Attachs. 9-12.) Second, with respect to the later set of disciplinary charges, defendants cite testimony from Chief Corsi, Heffernan, and Robert Markel, a former sergeant with the police department and, at one point, Hughes' direct supervisor, along with internal memoranda, which indicate that these charges were lodged against Hughes because he improperly requested overtime for a Mother's Day shift for which he signed up, but did not, in fact, actually work. (Dkt. No. 84 at

12

10-11; Dkt. No. 81, Attach. 14 at 1-6; Dkt. No. 81, Attach. 15 at 19-23; Dkt. No. 81, Attach. 17 at 9-10; Dkt. No. 85, Attach. 14.) With respect to taking away Hughes' weapon, badge, and identification, defendants point to testimony from the Town Supervisor, John Cunningham, who stated that he directed Chief Corsi to confiscate these items from Hughes because Hughes "seemed to be acting in an erratic manner," and Cunningham was "concerned that he might harm himself or his family or [Cunningham]'s family or the Chief." (Dkt. No. 81, Attach. 12 at 1, 44-45.) Finally, with respect to limiting Hughes' access to the police station, Chief Corsi, Markel, and Heffernan testified that there was a general concern about Hughes' threatening and confrontational behavior, which made the rank and file uncomfortable with Hughes' ability to come and go as he pleased. (Dkt. No. 81, Attach. 14 at 6-10; Dkt. No. 81, Attach. 15 at 27-28; Dkt. No. 81, Attach. 17 at 11-12.)

Given Hughes' and defendants' different narratives, it is clear that the jury's verdict rested, perhaps almost entirely, on credibility determinations, and the court is loath to re-examine those findings here. Indeed, the Second Circuit has held that where, as here, the outcome of the trial "turn[s] to a large extent on the credibility of the witnesses who testified

13

before the jury, the finding[s] and the verdict which follow[ ] are particularly ill-suited to after-the-fact second guessing." *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014); *see Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (holding that the jury's evaluation of witness credibility merits a "high degree of deference"); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992) ("Where the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial."), *abrogated on other grounds by Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995). Accordingly, based upon its review of the record, the court finds that the jury's verdict in favor of defendants on Hughes' First Amendment retaliation claims pertaining to his union activity and his speech regarding Chief Corsi's racial slur was not against the weight of the evidence.

**B.**   *Mt. Healthy* **Defense**

Finally, Hughes argues that the jury's finding that defendants proved their *Mt. Healthy* affirmative defense also went against the weight of the evidence. (Dkt. No. 80 at 22-24.) Essentially, Hughes' argument boils down to the fact that defendants provided no evidence that they treated

14

other officers similar to the way they treated him.  (*Id.*)  For example, with respect to the Mother's Day disciplinary notice, Hughes contends that "there is no evidence that the Town sought to discipline any other officer who put in for four hours overtime though he worked less than this."  (*Id.* at 22.)  And with respect to the disciplinary notice Hughes received in connection with his cancellation of a meeting with an ADA, Hughes claims that "the Town did not show that it sought to discipline any other officers who failed to appear at adjourned meetings with ADAs or that this never occurred."  (*Id.* at 23.)

Again, the court is unpersuaded, and for a very simple reason: Hughes has not cited, nor has the court found, any authority that requires defendants to provide evidence that they treated other officers similarly in order to establish their *Mt. Healthy* defense.  In other words, while this type of evidence may be useful in establishing a *Mt. Healthy* defense, it is not necessary.  Rather, the *Mt. Healthy* defense requires only that defendants prove that they "would have undertaken the same adverse employment action even in the absence of the protected conduct," *Deep*, 453 F. App'x 49 at 55 (internal quotation marks and citation omitted), "because of an available permissible motive," *Adler v. Pataki*, 185 F.3d 35, 47 (2d Cir.

15

1999). Here, as discussed at length above, defendants provided testimony that there were non-retaliatory explanations for any adverse actions taken against Hughes, and the jury was free to accept or reject that testimony. Further, the court did not instruct the jury that defendants needed to prove that they treated other officers similarly in order to establish their defense, and Hughes did not object to the instruction when given the opportunity. Accordingly, Hughes has not convinced the court that a new trial is warranted, and his motion, therefore, is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Hughes' motion to set aside the verdict and order a new trial (Dkt. No. 79) is **DENIED**; and it is further

**ORDERED** that the Clerk enter judgment in favor of defendants; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 7, 2015
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court